[NOTE. See Case No. 3,374.]

## Case No. 3,376.

### CREASE v. PARKER.

[1 Cranch, C. C. 448.][1]

Circuit Court, District of Columbia. Nov. Term, 1807.

EVIDENCE OF ACCOUNT—CONTRACT OF SLAVE.

1. The plaintiff will not be permitted to read to the jury his own statement of his account current, as a statement of the particular items of his claim. Nor will the court permit the jury to take minutes of the items of which no evidence is offered.

2. The promise of a slave does not bind him when free, although it be to pay for money borrowed, by which he obtained his freedom.

Assumpsit against a negro for the money lent and advanced by the plaintiff to the defendant to enable him to purchase his freedom, the defendant having thereby obtained a deed of emancipation.

Mr. Swann, for defendant, prayed the court to instruct the jury, in effect, that the defendant, being a slave when the money was advanced, is not answerable in this action unless the defendant has since promised upon that consideration, and that those facts may be given in evidence and avail the defendant upon the plea of non assumpsit.

Mr. Youngs, for plaintiff, offered to read, as a memorandum of the particular items of the plaintiff's claim, a written statement of his account of debits and credits; which THE COURT refused. He then prayed that the jury might be permitted to take minutes of those items of which the plaintiff produced no evidence; which THE COURT also refused, but permitted them to take a minute of the amount of the balance which the plaintiff claimed.

Mr. Swann and Mr. Herbert, for defendant, contended that a slave cannot contract an obligation, nor make a valid promise, and that the advance of the money to him while a slave cannot create an obligation in law. A subsequent acknowledgment cannot revive what never before existed. If there were an express promise it would be a new and independent cause of action which must be declared upon. A promise made since the suit brought, cannot support this action. The act of Virginia, of December 17, 1792 (chapter 103, § 36, p. 191), expressly discharges every emancipated slave from the performance of any contract entered into during servitude. A void promise cannot support a subsequent promise, for it is no consideration; but, if voidable only, it may. An infant may make a voidable promise, and subsequent assent will make it good; but if the infant executes a bond, it is a void act, and no subsequent

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

promise, at full age, to pay it, will bind the infant. A promise by a slave is absolutely void. If the slave gains money or property it belongs to his master.

Mr. Youngs, contra. There is no law which deprives the slave of the power of contracting. If there were no law to prevent a feme covert or an infant, they could contract. All persons may, prima facie, contract. The defendant must show the law which prevents a slave from contracting. The consideration of freedom is as valuable as that of necessaries for an infant. Villains in England were capable of contracting with everybody except their master; they could also transfer property; they might be sued, and their property unless seized by the lord, was liable to be taken in execution. Before the act of assembly, slaves were considered as real estate and descended with the land, like the villains in England. If a slave purchases and sells property, the master cannot claim it in the hands of the third person, although he might have seized it while in the hands of the third person. A slave may be sued, although not held to bail. This court, under the act of congress, gives a slave the same mode of trial for crimes as a free man, and this court said, a few days ago, (in Milly Rhodes's Case [Case No. 16,152]), that they could impose a fine upon a slave; although a slave cannot be taken on a capias ad satisfaciendum, his goods may be taken on a fieri facias, goods which the slave has a right to hold until the master has seized them to his own use. In England you could not serve a ca. sa. on a villain, but you might a fi. fa. on his goods. The act of Virginia applies only to contracts made with the former master or mistress. But if the slave could contract with a third person, the legislature did not mean to put it in the power of the master to release the slave from any such contract with a third person. The consideration was good in conscience and morality, and will support a promise or acknowledgment made after he became free.

THE COURT (CRANCH, Chief Judge, contra) instructed the jury, as stated in the bill of exceptions; the substance of which is that if they should be of opinion, from the evidence, that the claim of the plaintiff (if he has any) arose in consequence of money advanced by the plaintiff to the defendant, (who was then a slave) to purchase his freedom, and that he was afterwards manumitted by his master before the institution of this suit, and that the defendant, after the institution of this suit, acknowledged the debt in the presence of Harris, a witness, the plaintiff could not support the present action.

CRANCH, C. J., dissented, because he was of opinion that the defendant might make a valid promise, (subsequent to his emancipation) grounded upon the consideration of the money advanced while the defendant was a slave, and still this claim would be in conse-

quence of such advance of the money, and that such promise would become a new contract made subsequent to his manumission, and therefore not within the act of assembly. He also inclined to the opinion that the acknowledgment to Harris was a fact from which the jury might infer an express promise by the defendant subsequent to his emancipation, and before the suit brought. See Williams v. Brown, 3 Bos. & P. 72, Heath, J.'s, opinion.

[NOTE. On a special verdict found, the court gave judgment for the defendant. See Case No. 3,377, next following.]